IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STOUGHTON TRAILERS, LLC,

      Plaintiff,

   v.

ARCELORMITTAL DOFASCO, INC.,[1]

      Defendant.

OPINION and ORDER

07-cv-374-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  This is a civil action for monetary damages and specific performance of a contract. Plaintiff Stoughton Trailers, LLC is suing defendant ArcelorMittal Dofasco, Inc. for breach of warranties, alleging that trailer panels sold by defendant to plaintiff were defective. Jurisdiction is present under 28 U.S.C. § 1332.  Now before the court is plaintiff's motion for partial summary judgment on the issues of liability and specific performance.

  I conclude that the parties' exchange of purchase orders and order acknowledgments created a binding contract pursuant to Wis. Stat. § 402.207(1).  Because the parties

---

  [1] Also pending before this court is a motion by defendant ArcelorMittal Dofasco, Inc., formerly known as Dofasco, Inc., to change the caption in this case to reflect the change of defendant's corporate name.  Defendant's motion to change the caption will be granted and I have amended the caption accordingly.

exchanged forms containing conflicting warranty provisions, neither form warranty prevails and the transaction is governed by the statutory default provisions of the Wisconsin Uniform Commercial Code, Wis. Stat. chs. 401-411.  Applying those provisions to the undisputed facts, I find that defendant's panels failed to satisfy the applicable warranties. Finally, because plaintiff has not shown that specific performance is an appropriate remedy, a jury will have to determine the scope of the breach and the amount of damages.

From the proposed findings of fact and exhibits submitted by the parties, I find that the following material facts are not in dispute.

## UNDISPUTED FACTS

Plaintiff Stoughton Trailers, LLC, is a Wisconsin Limited Liability Company with its principal place of business in Stoughton, Wisconsin.  Defendant ArcelorMittal Dofasco, Inc., is a Canadian corporation with its principal place of business in Ontario, Canada.  The amount of damages at issue in this case exceeds $75,000.

Plaintiff manufactures over-the-road trailers and containers and provides products and services in the trailer and container markets.  Until the late 1990s, plaintiff's trailer business consisted primarily of aluminum sheet trailers.  Around that time, one of plaintiff's main competitors, Wabash National Corporation, seized a large part of the market with its Duraplate trailers, made with laminated panels instead of aluminum sheets.  As Duraplate

2

was flourishing, defendant approached plaintiff with a marketing package for a laminated panel technology defendant was developing.  Defendant represented that its steel and paper laminated panels would exhibit stiffness equivalent to aluminum and that potentially its panels would cost less than aluminum sheet panels.   Plaintiff expressed interest in defendant's product, called Zyplex, and notified defendant that it was interested in purchasing Zyplex so it could compete with Wabash's Duraplate trailers.

The parties decided to enter into a business relationship, agreeing generally that defendant would sell exclusively to plaintiff and plaintiff would buy all of defendant's Zyplex production.  The parties exchanged numerous written contract proposals but never reached agreement on any of them.

Plaintiff began purchasing all of defendant's Zyplex production in June 2001. Plaintiff issued a purchase order for every Zyplex panel purchase.  A provision at the top of the front page of each purchase order stated:

> The terms and conditions below and on the reverse side are not subject to variation, irrespective of the wording of Seller's Acceptance, without Buyer's written consent.

> The terms and conditions on the back of each purchase order included the following:

> Seller warrants the goods and services covered by this order to be free from defects in material, workmanship and design and to be in accordance with Buyer's expectations, specifications, drawings and/or samples in all respects, and agrees to properly defend and/or indemnify and/or hold Buyer harmless against any losses or claims for losses which Buyer may sustain or be subjected

3

to by reason of defective or allegedly defective material, workmanship or design of goods supplied against this order.  SELLER FURTHER AGREES THAT THE WARRANTIES CONTAINED IN THE UCC INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, SHALL BE APPLICABLE TO THE GOODS SUPPLIED HEREUNDER.

The purchase order further stated that "[t]he remedies herein reserved shall be cumulative and additional to any other remedies provided by law."

Defendant never refused an order from plaintiff on the ground that the purchase orders did not accurately set forth the parties' agreement, but responded to most of plaintiff's purchase orders with an order acknowledgment.  In small typeface at the bottom of the front page of defendant's order acknowledgments was the notice: "PLEASE SEE CONDITIONS OF SALE, INCLUDING LIMITATIONS OF WARRANTIES AND LIABILITY, ON REVERSE."  The following provisions appeared on the back of each order acknowledgment:

THE SALE OF THE PRODUCTS FURNISHED HEREUNDER IS SUBJECT ONLY TO THE TERMS AND CONDITIONS OF THIS ORDER ACKNOWLEDGMENT, INCLUDING THESE CONDITIONS OF SALE, NOTWITHSTANDING ANY OTHER TERMS OR CONDITIONS STIPULATED BY BUYER OR IMPLIED BY LAW OR ANY OTHER REPRESENTATIONS MADE BY SELLER, ALL OF WHICH ARE HEREBY EXPRESSLY DISCLAIMED AND EXCLUDED. No waiver, alteration or modification of these terms and conditions shall be binding upon Seller unless specified on the reverse hereof or otherwise authorized in writing by an officer of Seller.

Subject to the other provisions hereof, Seller warrants that it will, at its

4

option, repair or replace (at the delivery point specified) any product sold hereunder which is found to be defective in materials or workmanship or which fails to conform to any specifications expressly agreed to in writing by Seller, or refund to Buyer the invoice price (including transportation charges forming part of the invoice price) paid by Buyer for such product. THIS IS THE SOLE WARRANTY OF SELLER IN CONNECTION WITH THE PRODUCTS SOLD HEREUNDER; ALL OTHER WARRANTIES AND CONDITIONS (EXPRESS, IMPLIED, STATUTORY OR OTHERWISE) ARE HEREBY EXCLUDED. . . . SELLER'S LIABILITY HEREUNDER SHALL BE LIMITED, IN ALL CIRCUMSTANCES, TO THE INVOICE PRICE PAID BY BUYER FOR THE PRODUCTS PURCHASED HEREUNDER. THE FOREGOING LIMITATION OF LIABILITY IS A CONDITION OF SALE OF THE PRODUCTS AT THE PRICE OR PRICES QUOTED AND SHALL APPLY NOTWITHSTANDING ANY DEFECT IN OR FAILURE OF, INCLUDING TOTAL FAILURE OF, ANY PRODUCT. SELLER SHALL NOT IN ANY CIRCUMSTANCES BE LIABLE FOR ANY CLAIM UNLESS (A) SUCH CLAIM IS MADE PROMPTLY FOLLOWING DELIVERY OF THE PRODUCT AND, IN ANY EVENT, NOT LATER THAN 12 MONTHS AFTER DELIVERY, AND (B) SELLER IS GIVEN A REASONABLE OPPORTUNITY TO INVESTIGATE SUCH CLAIM AND SUCH PRODUCT.

SELLER ACCEPTS NO RESPONSIBILITY, RISK OR LIABILITY TO BUYER OR OTHERS CONCERNING, RELATING TO OR ARISING OUT OF: (A) THE MERCHANTABILITY OR OTHERWISE OF THE PRODUCTS SOLD HEREUNDER, (B) THE FITNESS OR OTHERWISE FOR BUYER'S PURPOSES OF THE PRODUCTS SOLD HEREUNDER, OR (C) THE PERFORMANCE, NON-PERFORMANCE, FAILURE, EFFICACY, LENGTH OF LIFE OF OR ANY DEFECT IN THE WHOLE OR ANY PART OR PARTS OF ANY PRODUCT OR PRODUCTS MANUFACTURED OR FABRICATED FROM OR INCORPORATING OR OTHERWISE USING THE PRODUCTS SOLD HEREUNDER . . . .

Plaintiff never agreed to defendant's conditions of sale in a writing.  In fact, the

parties never reduced any discussions concerning the warranties of defendant's panels to a

writing signed by both parties.

On December 2, 2002, plaintiff asked defendant whether it would match a warranty currently offered by plaintiff's competitor, Wabash.  Plaintiff asked for a transferable ten-year warranty that would cover panel damage, including delamination.  Plaintiff believed that Wabash's ten-year warranty was twice the length of the standard five-year warranty in the industry and that unless it could offer a warranty similar to Wabash's, it would be at a competitive disadvantage.  Defendant balked at the request and instead offered plaintiff a more limited and non-transferable five-year warranty similar to a warranty offered to Wabash's panel customers.  Plaintiff did not accept the proposal.  Later, defendant extended the term of its proposed warranty to ten years, but plaintiff was unwilling to accept that warranty without modifications that made the warranty transferable.  On September 16, 2003, defendant decided that it could not offer the warranty as modified.  Notwithstanding the failure to agree on a warranty terms, plaintiff continued to purchase panels from defendant by submitting its standard purchase orders and defendant continued to respond to those purchase orders with its standard order acknowledgments.

When manufacturing its trailers with the Zyplex panels, plaintiff encountered several types of panel defects.  These included paint problems, moisture retention, edge irregularity and, most prevalent, panel delaminations.  All of these defects were the result of poor production quality.   In addition to defects discovered by plaintiff during manufacturing,

6

customer claims for trailer panel defects arose frequently.

Defendant noted in an internal document that although no written warranty agreement was ever signed, the parties agreed in principle "that [defendant] would cover the costs of their errors...".  Another internal document stated in pertinent part:

> 1.  *Update of current position on panel warranty*
> Zyplex will stand behind our panel product.  If the customer incurs costs as a result of defective panels that were installed on units, we will do what it takes to make the customer whole.  This means, ensuring that their costs are covered for repairs to trailers in service–including parts replacement and labour.

In practice, defendant reimbursed plaintiff for its costs with regard to the defective panels, both for defects found by plaintiff during trailer manufacture and for defects found on trailers by customers.  Defendant also reimbursed plaintiff for the costs of parts and labor, consequential damages and claims that exceeded the cost of panels, all of which were outside the terms of defendant's pre-printed warranty provisions.

As defective panel claims increased, defendant held a meeting on March 2, 2005, and decided that "on a go forward basis," defendant would warrant the panels sold to plaintiff "as outlined in [defendant's] standard terms and conditions."  On May 13, 2005, defendant wrote plaintiff to say that it would not warrant its panels beyond the conditions of sale on its order acknowledgments.  Plaintiff purchased its last panel from defendant on April 12, 2005.  As of the date plaintiff filed this lawsuit, it had repaired or replaced thousands of

defective panels that were purchased from defendant and is continuing to receive new claims on a regular basis.


OPINION

The pending motion presents an opportunity to consider and apply the often-litigated Uniform Commercial Code § 2-207.  Each party contends that the warranty provisions on its form are the exclusive provisions governing the parties' relationship.  Plaintiff argues that its provisions govern because a contract was formed when the parties exchanged their purchase order and acknowledgment forms.   Alternatively, plaintiff argues, neither conflicting warranty provision applies and it is entitled to prevail as a matter of law on the UCC default warranty provisions.  According to defendant, the parties reached a separate oral agreement that defendant's limited warranty printed on the acknowledgment would govern the transaction.


A. Pre-Existing Oral Agreement

Defendant argues that prior to the sale of any panels, the parties verbally agreed to be bound by the limited warranty on defendant's acknowledgment form.  Defendant bases this argument on vague recollections of discussions of warranties between the parties and defendant's officers' belief that the warranty provisions on its acknowledgment form would

8

govern.  Defendant's arguments raise the question whether, viewing all of the evidence in the light most favorable to defendant, a reasonable jury could conclude that the parties had agreed that the warranty on the back of defendant's acknowledgment form would govern the transactions.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (l986).  I conclude that the evidence establishes that the parties never expressly agreed to be bound by defendant's form warranty and that no reasonable jury could conclude otherwise.

It is undisputed that the parties intended from the outset of their relationship to memorialize their agreements in writing, exchanging and responding to numerous written contract proposals, and that they ultimately failed to reach agreement.  Later in their relationship the parties tried again without success to reduce a warranty agreement to writing.  Finally, when defendant insisted that plaintiff agree to the full written provisions of defendant's form warranty, plaintiff terminated the relationship.  Defendant's contention that an oral agreement had been reached is inconsistent with these repeated failures to reach a written agreement on warranties.

Furthermore, defendant's internal correspondence and course of performance demonstrates unequivocally that defendant believed it had assumed warranty obligations beyond its form warranty.   Defendant described its obligation in an internal memorandum:

> If the customer incurs costs as a result of defective panels that were installed on units, we will do what it takes to make the customer whole.  This means, ensuring that their costs are

9

covered for repairs to trailers in service–including parts
replacement and labour.

The obligation described in its own document is far more extensive than the requirements
of its form warranty.  Consistent with this understanding, defendant paid numerous
warranty claims well beyond the limitations of its written proposal, including third party
claims, parts, labor, consequential damages and costs in excess of the panel purchase price.

The only reasonable conclusion is that the parties did not agree expressly on a
warranty provision.  Rather, as is typical in such circumstances, they embarked on a business
relationship based solely on the forms they exchanged, with the understanding that even in
the absence of an express agreement, commercial law would define their obligations.  In
short, the situation in which the parties find themselves is exactly that contemplated by
UCC § 2-207.

### B. Contract Formation under § 2-207

Sales contracts often do not involve an express agreement on all terms.  Instead, one
party sends its form to the other party, and the other responds with its own form, which may
include significantly different terms.  UCC § 2-207 is intended to reflect this marketplace
reality.  It recognizes that buyers and sellers rarely read the fine print in  purchase orders or
acceptances but rely only on the filled-in portions that specify critical terms such as quantity,

10

quality and price.  James J. White & Robert S. Summers, <u>Uniform Commercial Code</u> § 1-3, at 6-7 (4th ed. 1995).  To reflect the realities of the use of pre-printed forms, § 2-207(1) provides that a "definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

Defendant's acknowledgment was a definite and seasonable expression of acceptance.  Exchanged forms may contain differing terms and still constitute a contract, so long as the parties agreed on the critical terms of the sale.  <u>See</u>, <u>e.g.</u>, <u>Northrop Corp. v. Litronic Industries</u>, 29 F.3d 1173, 1176 (7th Cir. 1994) (90-day warranty offered by seller did not match unlimited warranty specified by buyer; contract formed nevertheless).  Plaintiff's purchase orders specified critical terms such as the product, price and delivery date and constituted offers.  Defendant's order acknowledgments in response to plaintiff's purchase orders operated as a timely acceptance of those terms.  <u>See Union Carbide Corp. v. Oscar Mayer Foods Corp.</u>, 947 F.2d 1333, 1337 (7th Cir. 1991) (finding that defendant's purchase orders were offers and plaintiff's invoices were acceptances).

Although an acknowledgment is an apparent acceptance of the critical terms in the purchase order, it does not constitute an acceptance if it is "expressly made conditional on assent to the additional or different terms."  UCC § 2-207(1).  In that situation, the

11

acknowledgment is treated as a counteroffer rather than an acceptance, with that result that no contract is formed unless the offeror accepts the offeree's terms.  <u>Dresser Industries, Inc., Waukesha Engine Div. v.  Gradall Co.</u>, 965 F.2d 1442, 1449 (7th Cir. 1992) (citation omitted).  Though no exact language is required to show that an acceptance is expressly conditional on assent to the terms of the acceptance, the offeree must make it clear to the offeror that the offeree is not willing to proceed with the transaction unless the offeree's terms are accepted.  <u>Dorton v. Collins & Aikman Corp.</u>, 453 F.2d 1161, 1168 (6th Cir. 1972).

Defendant's acknowledgments state that the sale of the panels is "subject only to the terms and conditions of this order acknowledgment" and that "[n]o waiver, alteration or modification of these terms and conditions shall be binding upon Seller. . . ."  This language is not sufficient to transform defendant's order acknowledgment into a counteroffer.  The phrase "expressly made conditional on assent" in § 2-207(1) has been construed narrowly.  <u>Philips Petroleum Co. v. Bucyrus-Erie Co.</u>, 125 Wis. 2d 418, 427, 373 N.W.2d 65, 69 (Ct. App. 1985), <u>rev'd on other grounds</u>, 131 Wis. 2d 21, 388 N.W.2d 584 (1986).  A statement that the acceptance is "subject to" only the terms and conditions of the acceptance is insufficient to make the acceptance "expressly . . . conditional on assent."  <u>Dresser Industries, Inc., Waukesha Engine Div. v. Gradall Co.</u>, 702 F. Supp. 726, 732 (E.D. Wis. 1988) (citing <u>Dorton</u>, 453 F.2d at 1168).  This is particularly true where, as in this case,

12

defendant's conditions of sale were printed inconspicuously on the reverse of defendant's order acknowledgments and defendant did not call special attention to the conditions of sale in any meaningful way.  In short, defendant failed to make clear its unwillingness to proceed with the transaction unless its terms were accepted.  <u>Dorton</u>, 453 F.2d at 1168.  Accordingly, defendant's order acknowledgments operate as acceptances of the offers in plaintiff's purchase orders.

In any event, even if the acknowledgment had not constituted an acceptance, a contract was formed by the years of performance during which panels were shipped by defendant and paid for by plaintiff.  Pursuant to UCC § 2-207(3), "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract."  Shipping and paying for the goods necessarily establishes a contract, even if the forms do not.  <u>Northrop</u>, 29 F.3d at 1177.  The remaining task is to determine the terms of the contract.

## C. <u>Contract Terms</u>

Section 2-207(2) prescribes which terms of the exchanged forms should be included in the contract.  Notably, subsection (1) recognizes as an acceptance a form containing "terms additional to or different from" the offer, while subsection (2) addresses only additional terms:

13

(2) The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

>  (a) The offer expressly limits acceptance to the terms of the offer;
>  (b) They materially alter it; or
>  (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Nothing in the statute prescribes the treatment of *different* terms, as opposed to *additional* terms, leaving it to the courts to grapple with the incongruity.

The Court of Appeals for the Seventh Circuit considered the issue in <u>Northrop</u>, 29 F.3d at 1178, addressing it under Illinois law:

> The Uniform Commercial Code, as we have said, does not say what the terms of the contract are if the offer and acceptance contain different terms, as distinct from cases in which the acceptance merely contains additional terms to those in the offer. The majority view is that the discrepant terms fall out and are replaced by a suitable UCC gap-filler. . . .  The leading minority view is that the discrepant terms *in the acceptance* are to be ignored. . . . Our own preferred view—the view that assimilates "different" to "additional," so that the terms in the offer prevail over the different terms in the acceptance only if the latter are materially different, has as yet been adopted by only one state. . . (Citations omitted).

Notwithstanding its own preferred view, the court ruled that Illinois would likely adopt the majority view, disregarding discrepant terms in the offer and the acceptance and instead applying suitable UCC gap-fillers.  <u>Id.</u>  In so ruling, the court recognized the interest in creating nationwide uniformity in the application of the Uniform Commercial Code, noting

14

that Illinois had frequently adopted majority rules in UCC cases.

I conclude that Wisconsin would also follow the majority view of § 2-207(2).  Not only does this conclusion enhance the uniformity of the law, it best reflects the reality of the parties' intentions.  It is apparent that neither party intended to accede to the other's warranty terms.  In fact, the parties tried and failed to reach an actual agreement on warranty terms throughout their relationship.  Under such circumstances, default to the neutral grounds of the UCC gap-filling provisions is the fairest basis on which to establish defendant's warranty obligations.  <u>Northrop</u>, 29 F.3d at 1178.  This conclusion is consistent with the leading Wisconsin case to have discussed the issue, <u>Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.</u>, 58 Wis. 2d 193, 206 N.W.2d 414 (1973) (applying Pennsylvania law).  <u>Air Products</u> discussed the possible applications of § 2-207(2) but did not endorse a particular approach.  It did hold, however, that the implied warranty of merchantability, § 2-314, and the statutory right to consequential damages, § 2-715, could not be effectively disclaimed by contradictory language in an accepting form, 58 Wis. 2d at 212-14, 206 N.W.2d at 424-25, following the majority rule under the circumstances of the case before it.

The majority rule has the added advantage of being consistent with the result in § 2-207(3) which adopts as the contract terms "those terms on which the writings of the parties agree, together with supplementary terms incorporated under any other provision of [the

UCC]."  Furthermore, the majority rule and the rule of § 2-207(3) have been combined and codified in the 2003 amendments to UCC § 2-207, not yet enacted into law by the states.

Applying the majority rule, a court would disregard the warranty terms in plaintiff's purchase order and in defendant's order acknowledgment and replace them with the appropriate default provisions of the UCC.   Among the potentially relevant default provisions are implied warranties of merchantability and fitness for particular purpose, §§ 2-314 and 2-315,  consequential damages, § 2-715, course of performance, § 2-208 and course of dealing and usage of trade, § 1-205.   <u>Dresser Industries</u>, 965 F.2d at 1451 (concluding that under Wis. Stat. § 402.207(3), all of the provisions of the UCC may be used to determine the terms of a contract). Because I conclude that the process for establishing contract terms in § 2-207(2) is consistent with that of § 2-207(3), all the provisions of the UCC may be used to determine the terms of a contract under § 2-207(2) just as all the UCC provisions may be used under § 2-207(3).

### D.  <u>Breach of Warranty</u>

The undisputed facts establish that defendant delivered numerous non-conforming panels that failed to satisfy the warranties of merchantability and fitness for a particular purpose because they were neither "fit for the ordinary purpose for which such [panels] are used," UCC § 2-314 (2)(c), nor fit for their particular purpose as trailer panels.  UCC § 2-

16

315.   Defendant's course of performance in routinely replacing these panels or reimbursing plaintiff for repair of these panels amply demonstrated that the panels did not meet the expectations of either party.  In light of this course of performance and the undisputed fact that the panels were defective as a result of manufacturing defects, it is apparent that some of the panels delivered by plaintiff failed to satisfy the applicable implied warranties and that defendant is liable for breach.

However,  fact issues remain concerning the extent of the warranty and breach.  For example, there is evidence that the industry standard for truck-panel performance and warranty was five years, which might serve as a limitation on the warranty term, UCC § 1-205 (2) and (3).  Northrop, 29 F.3d at 1178 (industry custom may limit warranty term).  In addition, a factual dispute may exist concerning the number of defective panels and the cost of repair.  At trial, it will be necessary to resolve these factual disputes regarding particular panel defects and determine the applicable industry standards as well as the course of the parties' dealing and performance.

## E.  Specific Performance

Plaintiff has moved for a determination that specific performance is an appropriate remedy.  UCC § 2-716 provides that "[s]pecific performance may be decreed where the goods are unique or in other proper circumstances."  Plaintiff has adduced no evidence that

17

the goods are unique or suggested that it has any intention of continuing to purchase the panels.  Therefore, specific performance is inappropriate unless there are "other proper circumstances."  One of these is a buyer's inability to cover after a seller's breach, which is "strong evidence of 'other proper circumstances.'"  Wis. Stat. Ann. § 402.716, cmt. 2 (2003).  There is no suggestion of an inability to cover.  In general, specific performance is an appropriate remedy  when plaintiff desires the delivery of specific goods identified to a contract, a circumstance patently not presented here.

The normal remedy for breach of contract is an award of damages.  Specific performance is exceptional. . . ."  Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996).  Specific performance is appropriate only if plaintiff can show that damages are an inadequate remedy.  Id.  Plaintiff has failed to demonstrate that damages would be an inadequate remedy and cites no authority for the proposition that specific performance is an appropriate substitute for monetary breach of warranty damages.  Accordingly, I find no ground on which to order specific performance as a remedy for defendant's breach.


ORDER

IT IS ORDERED that

1.  Defendant ArcelorMittal Dofasco, Inc.'s motion to change the caption to reflect the change of its corporate name is GRANTED.

18

2.  Plaintiff Stoughton Trailers, LLC's motion for partial summary judgment on the issue of liability is GRANTED and its motion to determine as a matter of law that specific performance is an appropriate remedy is DENIED.

Entered this 8th day of April, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

19